In the Matter of FRANMOR REALTY CORP., Petitioner, against J. RANDALL LE BOEUF, JR., et al., Constituting the Board of Zoning Appeals of the Village of Old Westbury, Respondents.

Supreme Court, Special Term, Nassau County, April 18, 1951.

*Charles H. Stoll* for petitioner.

*J. Oakey McKnight* for respondents.

HOOLEY, J. Application for a review, under article 78 of the Civil Practice Act, of the decision and determination made by respondents constituting the board of zoning appeals of the Village of Old Westbury which denied the appeal of the peti-

tioner from the denial by the village clerk of the issuance of a permit for the use of certain premises owned by petitioner as a gasoline service station.

On August 4, 1950, Herman Kron, acting on behalf of the Franmor Realty Corp., made application to the village clerk of Old Westbury for a building permit to erect a gasoline service station at the southeast corner of Guinea Road and Old Westbury Road on a plot 150 feet by 250 feet.

The village clerk denied the application as being in violation of section 301 of article III of the building zone ordinance which provides that in the district where the applicant's property is located, the use is restricted to residential single family dwellings on plots of not less than one acre.

The applicant thereupon appealed to the board of appeals for a variance of section 301 aforesaid so as to permit the erection of a gasoline service station on the ground that the plot could not be developed for a reasonable and profitable use for the owner.

A public hearing was held by the board of appeals on September 25, 1950. At that meeting there was discussion as to the basis of the appeal. An adjournment was taken to October 23, 1950, to permit the applicant to offer testimony. Section 802 of the zoning ordinance requires that notice of hearings before the board of appeals be advertised.

At the hearing on October 23, 1950, the attorney for petitioner moved to amend the notice of hearing which had been theretofore published by striking therefrom the reference to a variance and substituting in place thereof as the ground of appeal that the determination of the village clerk was contrary to the provisions of section 900 of article IX of the building zone ordinance. Thus the real basis of the petitioner's application appears to be that the petitioner was entitled to continue the use of the premises as a gasoline station as a nonconforming use. In the view which the court takes of the case herein it is unnecessary to pass upon the failure to readvertise with reference to the change in the nature of the application.

Considerable evidence was taken at the hearing before the board of appeals. That body denied the appeal.

The order denying the appeal does not indicate the reason therefor but the chief issue tried was whether or not the nonconforming use herein had been abandoned so that there would seem to be no doubt that the decision was predicated on the proposition that the applicant had abandoned the nonconform-

ing use by virtue of several years of nonuser. In this connection it is noted that subdivision 4 of section 900 of the zoning ordinance provides as follows: "No non-conforming use which shall have been discontinued for a period exceeding twelve (12) months shall be resumed nor shall it be replaced by another non-conforming use."

It appears without contradiction, from the testimony given at the hearing and from the various leases introduced in evidence, that said use was continuous for many years. The nonconforming use of the premises as a gasoline station was also acknowledged in effect by the village in 1934 subsequent to the enactment of the first zoning regulations of the village when the village board granted permission to petitioner to move the building used in connection with the gas station back ten feet because of the anticipated widening of Guinea Road. The termination date of the last lease offered in evidence was February 28, 1943.

However, the use was suspended in 1942 because the tenant was unable to continue due to war restrictions imposed on the use of gasoline. Because the tenant was thus unable to operate the station the principal pumps and tanks, which were not the property of either the tenant or the petitioner herein but were the property of the Tidewater Oil Company, were removed by said company. During the war years the president of the corporate owner was in the military service, and because of the action of the elements and other causes beyond the owner's control the building and premises became dilapidated and unfit for use. It further appears that since his return from military service the president of such corporation has made persistent efforts to rerent or to sell the premises for use as a gasoline station, and it also appears that at no time has the petitioner suffered or permitted the premises to be used for a purpose of a higher classification than that of the nonconforming use. It also appears from the testimony of the real estate brokers that the premises have been in the market for some time for sale as a gasoline station. It also appears that the premises sought to be continued as a nonconforming use herein are considerably smaller than that which was originally actually used as a gasoline station.

The portion of the property involved in the application is located on the village boundary line which separates the village of Old Westbury from the village of East Hills, and faces an area zoned for business and a business project actually constructed in the village of East Hills diagonally across the road.

The right to resume a nonconforming use after a period of nonuse depends in most cases on the question of what amounts to an abandonment or discontinuance of the use, and upon the effect of such abandonment or discontinuance under the applicable zoning statute or ordinance. The general rule is that the right of a property owner to continue a nonconforming use may be lost through abandonment of such use. However an abandonment, within the meaning of the rule under consideration, connotes a voluntary, affirmative, completed act (58 Am. Jur., Zoning, § 153, p. 1024, and cases cited). Abandonment was defined in *Matter of Longo* v. *Eilers* (196 Misc. 909, 913) as follows: " An abandonment within the meaning of such rule connotes a voluntary affirmative completed act. It means something more than a mere suspension, a temporary nonoccupancy of a building or a temporary cessation of business (*City of Binghamton* v. *Gartell,* 275 App. Div. 457). An abandonment is the voluntary intentional relinquishment of a known right. There must be a concurring intention to abandon and an actual relinquishment of the right."

In *City of Binghamton* v. *Gartell* (275 App. Div. 457, 460) the court, considering the elements of abandonment says: " Time is not an essential element of abandonment although the lapse of time may be evidence of abandonment. It is a universally accepted principle that mere nonuse of property over a period of time, when unaccompanied by any other acts indicating an intention to relinquish or abandon title thereto or ownership thereof, does not amount to an abandonment (1 C. J. S. Abandonment § 3, and cases there cited)."

It seems clear that in this case there was no evidence whatsoever of any affirmative act on the part of the petitioner which might be construed or deemed to be a voluntary abandonment herein. All that appears in the record is that there was a nonuser for several years. As heretofore pointed out, some of this period embraced the war years when the restrictions on gasoline forced the closing of the station.

However, the respondent relies on subdivision 4 of section 900 of the zoning ordinance above quoted. The respondent construes this section to mean that the mere fact that the business was discontinued for more than one year results in an abandonment regardless of whether or not there was any intention to abandon the nonconforming use.

This leaves one remaining query: Is the ordinance, insofar as it attempts to abolish a nonconforming use after nonuser for one year, valid and constitutional?

In this connection it must be borne in mind that the policy of the law is the gradual elimination of nonconforming uses and, accordingly, ordinances should not be given an interpretation which would permit an indefinite continuation of the nonconforming use. (8 McQuillin on Municipal Corporations [3d ed.], § 25.189 and cases cited.)

In *City of Binghamton* v. *Gartell* (*supra*) the court intimated that a provision in an ordinance that mere nonuse for a specified period of time should constitute a discontinuance would be valid. The court said (p. 460): " *There is no provision in the ordinance which we are construing that mere nonuse for any specified period should be considered a discontinuance.* The reasoning as well as the conclusions in the authorities cited is consistent with the principle *that unless so stated in the ordinance* cessation or discontinuance of a nonconforming use without the substitution of another use, or without evidence of an intent to abandon the nonconforming use, will not prevent its resumption." (Italics supplied.)

In *Wilson* v. *Edgar* (64 Cal. App. 654) the zoning ordinance provided for continuance of nonconforming uses and further provided " that any such building or premises which is not used for such nonconforming use for a period of 180 days at any time after the passage of this ordinance, then the use of such building or premises must thereafter conform to the use of the district within which it is situated." This was held to be a reasonable and valid ordinance.

In *Beszedes* v. *Board of Comrs. of Arapahoe Co.* (116 Col. 123) the Supreme Court of Colorado affirmed a judgment of the lower court which sustained the validity of a zoning resolution which provided that the use of land must conform with the zoning resolution after discontinuance of nonconforming use for one year. There the fact of nonuse for one year was conceded and the only question before the court was as to whether the zoning resolution was arbitrary, unreasonable and unconstitutional. The court held that it was not. (See, also, 8 McQuillin on Municipal Corporations [3d ed.], § 25.193, p. 382.)

But the courts have gone far beyond holding that mere nonuse for a specified period of time may terminate the nonconforming use. In *Standard Oil Co.* v. *City of Tallahassee* (183 F. 2d 410 [1950], certiorari denied 340 U. S. 892), the plaintiff owned a gas station in Tallahassee, Florida. On January 24, 1939, an ordinance was passed which removed from residence district " B " the area within which plaintiff's property was

located to business district "A" and provided that no additional service stations could be built within said area and provided further that all existing sites within said district "now used for motor vehicle service stations shall be discontinued as such on and after January 1, 1949." In April, 1948, the city again changed the area in which plaintiff's property was located from business district to residence "A". The prior provision requiring the discontinuance of the operation of the service station by January 1, 1949, was also made applicable to the area. The plaintiff brought an action to enjoin the enforcement of the ordinance. The Circuit Court of Appeals said in part (p. 413): "We find no merit in appellant's contention that enforcement of this ordinance would entail any unjust discrimination, or would be tantamount to depriving it of its property without due process merely because the site was acquired and improved at considerable expense before the zoning ordinance was enacted. The general rule here applicable is that consideration of financial loss or of so-called 'vested rights' in private property are insufficient to outweigh the necessity for legitimate exercise of the police power of a municipality. [Cases cited.]"

In the famous *Dema Realty Company* cases which arose in Louisiana (*State ex rel. Dema Realty Co.* v. *McDonald,* 168 La. 172, certiorari denied 280 U. S. 556; *State ex rel. Dema Realty Co.* v. *Jacoby,* 168 La. 752) there was involved a zoning ordinance of the city of New Orleans which prohibited the establishment of all business of every kind in a certain residential area therein defined, and provided *that all businesses then in operation within said area should be liquidated* within one year from the date of the passage of the ordinance. The businesses operated by the defendants, in the former case a grocery store, and in the latter case a drug store, had been in existence before the adoption of the ordinance. It so happened that the two businesses in question were the only businesses in the district. The Court of Appeals of Louisiana sustained the validity of the ordinance. In the first-named case the court said in part (168 La. 182): "But, if the village had the authority to create and maintain a purely residential district, which the court held it did have, and if such an ordinance was not arbitrary and unreasonable, it follows necessarily that the village was vested with the authority to remove any business or trade from the district and to fix a limit of time in which the same shall be done."

In the second of the *Dema* cases the court specifically found that the drug business was a small one which could easily be liquidated within the period of a year.

The *Dema* cases have been much criticized and this court does not feel that the period of one year is a reasonable period in the ordinary case within which to require the amortization of a going business but it shows the extent to which courts have gone in connection with ordinances designed to eliminate non-conforming uses.

Zoning ordinances providing that if more than a certain percentage of the value of a nonconforming building is destroyed by fire or other cause, the right to replace the nonconforming building is terminated, have been held to be valid and constitutional. (8 McQuillin on Municipal Corporations [3d ed.], § 25.195, p. 383; *Matter of Koeber* v. *Bedell,* 254 App. Div. 584, affd. 280 N. Y. 692; *Navin* v. *Early,* 56 N. Y. S. 2d 346.)

In the cases which hold that the word " discontinue " in an ordinance is the equivalent of the word " abandonment " (*State ex rel. Schaetz* v. *Manders,* 206 Wisc. 121; *Haller Baking Co.'s Appeal,* 295 Pa. 257) there was no Statute of Limitations in the ordinance as in the case at bar.

It seems well established by the decisions that ordinances such as the one at bar are valid and constitutional. The only question that might arise in each case is the reasonableness of the period of time set forth in the ordinance. The court is satisfied that the period of a year in the ordinance herein is a reasonable one. The actual period of nonuse herein has been five years since the end of the war and eight years altogether.

Application for a review granted and on such review the decision of the board of appeals is affirmed.