Ernie LESSARD and Susan Lessard, Petitioners-
Appellants,

v.

BURNETT COUNTY BOARD OF ADJUSTMENT,
Respondent-Respondent.

Court of Appeals

*No. 01–2986. Submitted on briefs May 21, 2002.—Decided
June 25, 2002.*

2002 WI App 186

(Also reported in 649 N.W.2d 728.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *William L. Norine* of *Stephenson & Sanford PLC* of Grantsburg.

On behalf of the respondent-respondent, the cause was submitted on the brief of *David L. Grindell* of Siren.

Before Cane, C.J., Hoover, P.J. and Peterson, J.

¶ 1. CANE, C.J. Ernie and Susan Lessard appeal a judgment upholding a decision of the Burnett County

Board of Adjustment granting the Lessards a conditional use permit to expand their campground from twenty-one to forty-four units, upon the condition that six preexisting sites located near the lake be phased out over five years. The Lessards claim that the board acted without a reasonable basis and contrary to law because: (1) the zoning ordinance does not apply to their preexisting campsites; (2) the zoning ordinance cannot regulate mere increases in use; (3) the zoning ordinance does not apply to discontinued portions of the campground; (4) in order to apply the ordinance, there must be proof of abandonment; and (5) the conditions attached to the permit are unreasonable.

¶ 2. We conclude that the board correctly applied the ordinance to the proposed expansion and did not attempt to regulate a mere increase in a preexisting use. We also reject the alternative argument that the discontinuance provisions of the ordinance do not apply. Proof of intent to abandon is not required, and the conditions attached to the permit have a rational basis. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 3. The Lessards own and operate a campground formerly known as the Hi-Haven Resort.[1] It has existed since 1935, predating the Burnett County Zoning Ordinance. Six of Hi-Haven's existing camping sites are located within seventy-five feet of the ordinary high water mark of Yellow Lake. Under the zoning ordinance, Yellow Lake has a setback requirement of not less than seventy-five feet from the ordinary high water mark.

---

[1] Although the record reflects that the Lessards changed the name of the campground, the parties' briefs refer to it as Hi-Haven Resort.

826

¶ 4. On August 7, 2000, the Lessards applied to the Burnett County zoning administrator for a conditional use permit to add twenty-three RV sites. It is undisputed that for at least the ten years preceding their application, Hi-Haven had been licensed for a maximum of twenty-one sites.[2] The Lessards' application stated that they planned to "[e]xpand existing campground to 44 sites total (existing campground has 21 sites) we would like to add 23 more."

¶ 5. The committee's minutes indicate that the original resort had RV sites "over the years," nine rental cabins and a lodge. The lodge had burned, and only six cabins remained. The Lessards planned to remove the remaining cabins and increase the number of RV sites. A diagram attached to the minutes indicated that a future septic field is planned near future sites thirty-nine through forty-four and "power [will be] supplied to each RV site by N.W. Electric Co."

¶ 6. The zoning committee determined that a permit was necessary for the Lessards' planned addition of twenty-three more RV sites. It issued a permit, upon the condition that the six sites within the seventy-five-foot setback of Yellow Lake be moved over the next five years in order to comply with the zoning ordinance. The Lessards appealed to the board, which affirmed the committee's determination. A board member remarked: "I believe the zoning committee had the authority to grant the [conditional use permit] because we're changing a resort to an RV park [and] also changing the number of campgrounds from 21 to 44."

---

[2] At the December 4 public hearing, the zoning administrator stated that records indicate that from 1987, the campground was licensed for twenty-one sites.

¶ 7. The Lessards sought certiorari review in the circuit court, arguing that because no structures were involved, the zoning ordinance did not apply. The circuit court disagreed. It found that the County's land use ordinance prohibits all RV parks except those that predate the adoption of the zoning ordinance or those that possess a conditional use permit. The court considered the ordinance section that provided any proposed change in the approved campground shall be presented to the zoning office for approval.

¶ 8. The circuit court concluded that the ordinance applied to the Lessards' proposed expansion of the campground and authorized the County to attach reasonable conditions to a conditional use permit. It determined that the board's desire to eliminate nonconforming uses in a planned manner was consistent with the intent of the ordinance. The court held that the board proceeded under a correct theory of law and that there was no basis for overturning its decision.

## BURNETT COUNTY LAND USE ORDINANCE

¶ 9. Under the ordinance, the campground is zoned RR-1, a residential-recreation district. Permitted uses include one-family dwellings, private garages and carports, horticulture and gardening, and essential services, utilities and customary accessory uses. Resorts and trailer parks may be permitted if authorized by a conditional use permit. BURNETT COUNTY, WIS., LAND USE ORD. § 3.2(2)(b)(2). The ordinance authorizes the zoning committee to attach reasonable conditions to the permit. *Id.* at § 8.1(3).

¶ 10. The zoning ordinance also regulates campgrounds. *Id.* at § 6.7. It prohibits camping within seventy-five feet of the ordinary high water mark of any

navigable water. *Id.* at § 6.7(1)(g). It also requires that "[a]ny proposed changes in the approved campground be presented to the Zoning Office for approval." *Id.* at § 6.7(1)(e).

¶ 11. With respect to nonconforming uses, the ordinance provides: "The existing lawful use of a structure or premises which is not in conformance with the provisions of this ordinance may be continued" subject to certain conditions. *Id.* at § 10.1. One condition provides that if a nonconforming use "is discontinued for twelve (12) consecutive months, any future use of the building and premises shall conform to this ordinance." *Id.* at § 10.1(2). Another condition provides that no structural addition can exceed fifty percent of the structure's fair market value. *Id.* at § 10.1(1).

## STANDARD OF REVIEW

¶ 12. In an action for certiorari review, our review is the same as in the trial court. *City News & Novelty, Inc. v. City of Waukesha*, 231 Wis. 2d 93, 102, 604 N.W.2d 870 (Ct. App. 1999). We confine our review to whether: (1) the board kept within its jurisdiction; (2) the board acted according to the law; (3) the action was arbitrary, oppressive or unreasonable; and (4) the evidence presented was such that the board might reasonably make the order or determination in question. *Id.* at 102–03.

## DISCUSSION

1. The Zoning Ordinance's Application to Expanded Use

¶ 13. The Lessards argue that the board cannot point to any language in the ordinance to support its decision. They contend that because the campground is a preexisting use and because they are making no structural additions that exceed fifty percent of the property's current market price, or that violate setback requirements, the ordinance is inapplicable. As a result, they assert that the board acted without reason and contrary to law. We disagree.

¶ 14. It is undisputed that Hi-Haven operates as a nonconforming use that preexisted the ordinance. We conclude that the board recognized the Lessards' right to operate the campground as it had been operated in the past. However, in issuing the conditional use permit, the board sought to regulate the proposed expanded use. In doing so, the board acted rationally and according to law.

¶ 15. The zoning ordinance provides that the "existing use" of premises not in conformance with the ordinance may be continued. An existing nonconforming use is a use of land for a purpose not permitted in the district in which the land is situated. *Waukesha County v. Seitz*, 140 Wis. 2d 111, 114–15, 409 N.W.2d 403 (Ct. App. 1987). Land use qualifies as nonconforming if there is active and actual use of the land that existed before the commencement of the zoning ordinance and has continued in the same or a related use until the present. *Id.* at 115.

830

¶ 16. The County may properly limit its recognition of nonconforming uses to only those in effect at the time the zoning law became effective. "[N]onconforming uses are closely limited and *are not to be enlarged* in derogation of the general scheme" of the ordinance. *Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 24, 522 N.W.2d 536 (Ct. App. 1994) (citation omitted).

> While a county may not prohibit the continuance of the lawful use of any building or premises for any trade or industry for which such building or premises is used at the time the ordinances take effect, *see* § 59.69(10), STATS.,[3] the statutory authority to regulate nonconforming uses under § 59.69(10) includes the authority to enact ordinances that limit the change or extension of non-conforming uses.

*Schroeder v. Dane County Bd. of Adj.*, 228 Wis. 2d 324, 339, 596 N.W.2d 472 (Ct. App. 1999).

¶ 17. "In general, a nonconforming use is limited to the area it covers at the time of the enactment of the zoning ordinance or restriction and cannot later be expanded to the boundaries of the tract." 8A McQUILLAN, MUNICIPAL CORPORATIONS § 25.208, at 128 (rev. 3$^d$ ed. 1994).

> Where an extension of a nonconforming use involves a physical extension of the use to land not used for the prohibited purpose prior to the enactment of the restrictive ordinance, the courts have held that the extension violates an ordinance which in general language prohibits the extension of nonconforming uses.

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

1 Anderson's American Law of Zoning § 6.51, at 642 (4th ed. 1995).

¶ 18. In a case prohibiting a mobile home park expansion, the Colorado Supreme Court ruled "the stopping of an expansion of a non-conforming use is not an arbitrary or unreasonable exercise of governmental power." *City Of Greeley v. Ells*, 527 P.2d 538, 541–42 (Colo. 1974) (citation omitted). We agree that this statement accurately reflects the law. The board's decision to issue the conditional use permit to regulate the Lessards' proposed addition of twenty-three RV sites was rationally based and made according to law.

¶ 19. The Lessards nonetheless claim that they are not expanding the campground but merely resuming former use. They argue that "the resort has had at least 44 units as early as 1935 as profusely demonstrated before the Board of Adjustment and, moreover, this factual contention was never opposed by the County." The Lessards also argue that the County never opposed the proof that "the entire property was used as a campground since 1935, and that many more than 21 sites had been operated." We are not persuaded.

¶ 20. A nonconforming use will not be recognized in the absence of sufficient competent evidence to prove it was lawfully in existence at the time the ordinance was enacted. McQuillin, *supra,* at § 25.188.50. "The burden of establishing that the use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it." *Pewaukee Marina*, 187 Wis. 2d at 30 (citation omitted). The allocation of this burden is " 'in accordance with the

general policy of zoning to carefully limit the extension and enlargement of nonconforming uses.' " *Id.*

¶ 21. The Lessards identify no board findings to support their assertion. The testimony before the board as to the dates and number of RV sites licensed or in use before 1987 was vague. The Lessards point to no proofs that the twenty-three additional RV units preexisted the ordinance. Instead, they cite to their own trial court brief and to the circuit court's finding that "Hi-Haven Resort has operated as a camping facility for many years, dating back to the earliest date of 1935."

¶ 22. These record references fall short of meeting the Lessards' burden of demonstrating that the preexisting use involved forty-four units. Because the Lessards identify no proofs and fail to provide appropriate references to the record to support their contentions, their argument fails.[4] *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990).

2. INCREASE IN USE

■

¶ 23. Next, the Lessards correctly argue that mere increases in use due to change in volume or frequency cannot be regulated, citing *Pewaukee Marina*. Here, however, the board was not attempting to

---

[4] In their statement of facts, other than their citation to the trial court's findings, conclusion and judgment, the Lessards cite generally to their trial court brief. Their trial court brief cites to the "*Memorandum of Ernie and Susan Lessard in the Burnett County Board of Adjustment*." The supporting memorandum's statement of facts contains no references to proofs. Citation to a trial court brief fails to comply with WIS. STAT. § 809.19(1)(d), which requires "appropriate references to the record." *Id.*; *see also Calaway v. Brown County*, 202 Wis. 2d 736, 750–51, 553 N.W.2d 809 (Ct. App. 1996).

regulate mere increases in the use of the twenty-one sites due to a change in volume or frequency. Rather, the board issued the conditional use permit to regulate the expansion from twenty-one sites to forty-four sites.

¶ 24. While a mere increase in the volume, intensity or frequency of a nonconforming use is not sufficient to invalidate it, if the increase in volume, intensity or frequency of use is coupled with some element of identifiable change or extension, the enlargement will invalidate a legal nonconforming use. *Seitz*, 140 Wis. 2d at 117.[5] The Lessards' proposed elimination of cabins and the expansion from twenty-one to forty-four RV sites was an identifiable change and extension of the

---

[5] Arguably, *Waukesha County v. Seitz*, 140 Wis. 2d 111, 409 N.W.2d 403 (Ct. App. 1987), could be read as authorizing an expanded nonconforming use. *See Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 20, 522 N.W.2d 536 (Ct. App. 1994) ("Extension of Seitz's marina pier was simply an improvement of a legal nonconforming use to accommodate increased boater traffic; it did not change the use."). A close reading of *Seitz* reveals, however, that it did not directly address the issue whether a physical extension or physical enlargement of a nonconforming use invalidates it. *Seitz* states: "The expansion of a pier . . . may . . . serve to constitute an illegal expansion of a nonconforming use." *Seitz*, 140 Wis. 2d at 119. *Seitz* noted that the issue is expressly controlled by statute and ordinance, "neither of which was alleged or proven in this case." *Id. Seitz* also noted that the "record is devoid of any allegation or evidence indicating that Seitz's pier expansion has somehow violated these legislative markers." *Id.* at 121. Therefore, we do not read *Seitz* as protecting the physical extension of a nonconforming use. A later case that refers to "expansion of a legal nonconforming use" refers to increased volume and frequency. *Racine County v. Cape*, 2002 WI App 19, 250 Wis. 2d 44, ¶ 14, 639 N.W.2d 782.

previous use for which it had been licensed. Consequently, the board could properly issue a conditional use permit to regulate the change.

3. DISCONTINUANCE

¶ 25. Next, the Lessards challenge the board's alternative basis for their decision that even if Hi-Haven had operated forty-four RV sites in the past, its failure to license more than twenty-one sites demonstrates that their use had been discontinued for more than one year, allowing the County to apply the ordinance. The Lessards claim that to apply the ordinance's "discontinuance" provision, the entire campground and not just a portion of it had to have been discontinued. We are unpersuaded.

¶ 26. "A zoning ordinance or regulation may provide that the use of premises must conform to the ordinance or regulation if a nonconforming use thereof is discontinued for a designated period of time." *State ex rel. Peterson v. Burt*, 42 Wis. 2d 284, 290, 166 N.W.2d 207 (1969); *see also* WIS. STAT. § 59.69(10).

¶ 27. The Lessards offer no persuasive authority for their assertion that the discontinuance provision cannot be applied to portions of the campground. By analogy, they cite the "diminishing assets" rule found in *Sturgis v. Winnebago Adj. Bd.*, 141 Wis. 2d 149, 413 N.W.2d 642 (Ct. App. 1987). The *Sturgis* case, which determined that a conditional use permit was unnecessary to expand a quarrying operation, does not apply. *Id*. We explained:

> Because of this unique nature of mineral extraction, many courts have adopted the "diminishing assets" rule, which we deem applicable here. . . . . "In a quar-

rying business the land itself is a mineral or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is 'using' all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed."

*Id.* at 153 (quoting *Du Page County v. Elmhurst-Chicago Stone Co.*, 165 N.E.2d 310, 313 (Ill. 1960)). "[T]he very nature of the excavating business contemplates the use of land as a whole, not a use limited to a portion of the land already excavated." 1 ANDERSON, *supra,* § 6.52, at 647–48. We decline to extend the diminishing assets rule beyond the realm for which it was intended, that of mineral extraction. Because the Lessards' business does not involve mineral extraction, the diminishing assets rule does not apply.

¶ 28. Under the Burnett County Land Use Ordinance, if a use is discontinued for more than twelve months, future use must conform to the ordinance. *Id.* at § 10.1(2). It is the Lessards' burden to establish the existing actual and active use. *See Pewaukee Marina,* 187 Wis. 2d at 30. Even if the Lessards had demonstrated that Hi-Haven had operated forty-four RV units in the past, because only twenty-one had been licensed since 1987, the board could reasonably conclude that they had been discontinued and their use could not be resumed without a permit. *See Spencer v. Zoning Hear-*

*ing Bd.*, 533 A.2d 497, 500 (Pa. Commw. 1987) (Use of second nonconforming mobile home had been abandoned within the meaning of the ordinance and may not be resumed.).

4. INTENT TO ABANDON

¶ 29. The Lessards claim that even if a portion of the campground had been discontinued, there was no proof of any intent to abandon those sites. They claim that absent proof of intent to abandon the sites, the ordinance's discontinuance provision does not apply. This argument was rejected in *Peterson*. To apply the "discontinuance" provisions, proof of intent to abandon the nonconforming use is not required. *Peterson*, 42 Wis. 2d at 290–91; *see also Village of Menomonee Falls v. Veierstahler*, 183 Wis. 2d 96, 104, 515 N.W.2d 290 (Ct. App. 1994) ("The question of voluntary intent is irrelevant where the cessation of the nonconforming use has endured for the requisite time under the ordinance.").

¶ 30. Under the terms of the ordinance, if a nonconforming use has been discontinued for more than twelve months, proof of intent to abandon the nonconforming use is not required. *Peterson*, 42 Wis. 2d at 290–91. Here, the campground was licensed for just twenty-one sites for more than ten years preceding the application. Consequently, the board could find that sites in excess of twenty-one had been discontinued within the meaning of the ordinance.

5. REASONABLENESS OF THE CONDITIONAL USE PERMIT

¶ 31. Finally, the Lessards complain that attaching the condition that the six sites within the seventy-five-foot setback be eliminated within five years is

arbitrary and unreasonable.[6] We disagree. "[T]he spirit of zoning is to restrict a nonconforming use and to eliminate such uses as quickly as possible." *Seitz*, 140 Wis. 2d at 116. It is up to the Lessards whether to accept the permit with its conditions. The board's decision to permit the proposed expansion upon the condition that the six sites within the setback be eventually eliminated is reasonably related to the legitimate goal to bring the campground into compliance with the land use ordinance.

## CONCLUSION

¶ 32. There is no dispute that the campground has operated as a nonconforming use that preexisted the ordinance. The board recognized the Lessards' right to continue to operate the campground as it had been operated in the past. However, for more than ten years preceding the Lesssards' application, the campground was licensed for only twenty-one units. The ordinance applies to any proposed expansion. Also, the board could reasonably find that any units in excess of twenty-one had been discontinued and the resumption of their use required a permit. The conditions attached were reasonable. We conclude the board acted according to law and its determination had a rational basis. The Lessards fail to demonstrate any ground to overturn the board's decision.

*By the Court.*—Judgment affirmed.

---

[6] At the December 4, 2000, board meeting, the zoning administrator questioned whether the issue of reasonableness of the conditions was properly before the board. For purposes of judicial economy, we address the issue here.